UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN HEIMAN and JTE, INC.,

Plaintiffs,

v.

BIMBO FOODS BAKERIES DISTRIBUTION
CO. f/k/a BESTFOODS BAKING
DISTRIBUTION CO.,

Defendant.

No. 17 CV 4065

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, John Heiman and JTE, Inc., bring this action against defendant, Bimbo Foods Baking Distribution Company, for breach of contract and tortious interference. Defendant moves to dismiss the complaint. For the following reasons, the motion is granted.

**I.  Legal Standards**

Federal courts are courts of limited jurisdiction and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). The burden of establishing that a district court has proper jurisdiction lies with the plaintiff. *Id*. A defendant arguing that a plaintiff has not met this burden may move for dismissal under Federal Rule of Civil Procedure 12(b)(1). When reviewing a 12(b)(1) motion, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence

has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but need not accept legal conclusions or conclusory allegations. *Id.* at 678–79. Because "complaints need not anticipate and attempt to plead around defenses," it is uncommon for a court to dismiss a case for noncompliance with the statute of limitations. *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). A motion to dismiss a claim as barred by the statute of limitations should be granted only where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

## II.  Background

Plaintiff, John Heiman, entered into a contract with defendant, Bimbo Foods Bakeries Distribution Company, in October 2000, to distribute baked goods in a designated area. [5] ¶¶ 2, 10.[1] Heiman was the founder and owner of JTE, Inc., through which he delivered the baked goods. *Id.* ¶¶ 2, 6. Heiman later formally assigned the contract to JTE. *Id.* ¶ 10. Heiman resided in Illinois, and JTE had its primary place of business in Schaumburg, Illinois. *Id.* ¶ 6. Bimbo Foods was a

---

[1] Bracketed numbers refer to entries on the district court docket. The operative complaint is [5].

Delaware corporation with its primary place of business in Pennsylvania. *Id*. ¶ 7.[2] JTE was dissolved in 2014. *Id*. ¶ 6.

The distribution agreement provided, in relevant part: "[Bimbo Foods] hereby recognizes DISTRIBUTOR'S ownership of the Distribution Rights, which ownership will continue until the Distribution Rights are sold or transferred as provided herein. . . . The parties agree that the Distribution Rights can be exercised only pursuant to the terms of this Agreement and that any termination of this Agreement requires DISTRIBUTOR or [Bimbo Foods], for the account of DISTRIBUTOR, to sell Distribution Rights as provided herein." *Id*. ¶ 11. The agreement distinguished between curable and non-curable breaches. *Id*. ¶ 12. For curable breaches, Bimbo Foods was required to give Heiman three days' written notice to cure. *Id*. Non-curable breaches, which included those involving criminal activity or fraud, threats to public health or safety, and threats to do significant harm to Bimbo Foods, its trademark, or reputation, did not require notice or an opportunity to cure. *Id*. Repeated curable violations constituted a non-curable breach by threatening significant harm to Bimbo Foods and its reputation. *Id*. The distribution rights were secured by a note for $50,600. *Id*. ¶ 13. The agreement also

---

[2] Plaintiffs' complaint fails to mention Heiman's citizenship, which is not the same as residence, for diversity purposes. *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664 (7th Cir. 2014) ("Citizenship means domicile (the person's long-term plan for a state of habitation) rather than just current residence."). Nevertheless, it appears that Heiman is domiciled in Illinois, and so he is an Illinois citizen. The complaint also fails to include JTE's state of incorporation. However, JTE was, in fact, an Illinois corporation. According to the Illinois Secretary of State's website, JTE was incorporated in Illinois. The parties referred to JTE as an Illinois corporation. *See* [15-1] at 2. This court has diversity jurisdiction over the complaint.

3

contained a choice-of-law provision, providing that New York law would govern disputes arising under the contract. [5-1] at 17.

JTE substantially performed its obligations through January 13, 2011. [5] ¶ 14. In the spring of 2008, JTE alleges, Bimbo Foods, through its employees, began fabricating curable breaches by JTE, including false reports of poor service and out-of-stock products at stores in JTE's distribution area. *Id.* ¶ 16. Bimbo Foods employees removed JTE-delivered products from customer shelves or pushed the products to the side or back to photograph the empty shelves. *Id.* ¶ 17. On one occasion, a distributor caught a Bimbo Foods district manager removing products from a shelf and taking a photograph. *Id.* ¶ 18. When caught, Bimbo Foods assured JTE it would never happen again. *Id.* But unbeknownst to JTE, Bimbo Foods continued these tactics. *Id.* Bimbo Foods also spread false statements regarding the quality of JTE's service to damage JTE's reputation and devalue its distribution rights. *Id.* ¶ 19. These actions were part of Bimbo Foods' larger scheme to intimidate its distributors into selling their routes to new operators, who would earn lower commissions (18 percent, as opposed to the 22-percent commission distributors received under older agreements, like JTE's). *Id.* ¶ 22. JTE alleges that the breaches Bimbo Foods asserted against it were fabricated to pressure JTE into selling its distribution rights against its will. *Id.* ¶ 24.

When JTE refused to sell its distribution rights in January 2011, Bimbo Foods breached the distribution agreement and terminated JTE's distribution rights, citing multiple fabricated, curable breaches. *Id.* ¶¶ 25, 33–36. Later that

year, around September, Bimbo Foods caused JTE to sell a portion of its distribution rights, and in October, caused the sale of the remainder. *Id.* ¶ 26. The second purchaser bounced the check for the purchase of his portion, and JTE received significantly below fair-market value for the sale. *Id.* ¶¶ 27–28. JTE first discovered Bimbo Foods' scheme in late 2013 or early 2014. *Id.* ¶ 22.

JTE alleges that Bimbo Foods' termination of the distribution agreement expressly violated the terms of that agreement and that fabricating breaches to force JTE to sell its distribution rights breached the implied covenant of good faith and fair dealing. *Id.* ¶ 39. JTE also alleges that Bimbo Foods caused JTE's rights to be sold for less than fair-market value, in violation of the agreement. *Id.* ¶ 41. And, JTE states, Bimbo Foods tortuously interfered with its relationships with stores in its distribution area with the intent to harm JTE's relationships and drive down the value of its distribution route. *Id.* ¶ 46.

### III. Analysis

Bimbo Foods moves to dismiss Heiman's claims pursuant to Rule 12(b)(1), arguing that Heiman lacks standing. Bimbo Foods also moves to dismiss all claims by both Heiman and JTE under Rule 12(b)(6), as barred by the applicable statutes of limitations. Illinois law governs the analysis, and the motion to dismiss is granted.

#### A. Rule 17

Defendant's argument that Heiman, as an individual, lacks standing is imprecise. The issue is not whether Heiman satisfies the requirements of Article III

5

standing, rather it is whether he is the "real party in interest" as required by Rule 17. *See Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996) ("[Plaintiff's] problem is not standing (in the sense that the complaint does not allege a 'case or controversy' justiciable under Article III) but the identity of the real party in interest."). Courts should not confuse Article III standing with the Rule 17 inquiry. *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008).[3] While Heiman has alleged an injury in fact sufficient to establish Article III standing (namely, the financial and reputational harms he suffered), Bimbo Foods is correct that Heiman is not the proper party to pursue this action.

Rule 17 provides, in part, "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). The capacity of an individual to sue is determined by the law of the individual's domicile, and the capacity of a corporation to sue is determined by the law under which it is organized. Fed. R. Civ. P. 17(b)(1)–(2). Heiman is domiciled in Illinois, and JTE was an Illinois corporation. "Illinois follows the widespread rule that an action for harm to the corporation must be brought in the corporate name. When investors have been injured in common, they must continue to act through their collective—the corporation." *Frank*, 83 F.3d at 160. Injury to the corporation does not, however, prevent an investor who has suffered a distinct personal injury from bringing suit—such as a shareholder-employee who contests his discharge from employment. *Id.*

---

[3] Some courts have characterized Rule 17's real-party-in-interest requirement as essentially a codification of the prudential-standing principle that a party cannot sue in federal court to enforce the rights of another. *Rawoof*, 521 F.3d at 756.

6

Heiman brings claims against Bimbo Foods for breach of contract and tortious interference of contract. Bimbo Foods inflicted harm on JTE, the corporation. Heiman does not allege injuries that are distinctly personal, which would allow him to bring an individual cause of action. JTE, as the signatory to the relevant contract and the one directly injured by Bimbo Foods' actions, is the real party in interest to this action, not Heiman.

That JTE dissolved in 2014 does not matter. Illinois law provides that a dissolved corporation continues to exist for winding up and liquidation purposes, retains title to its assets, and can sue and be sued. 805 ILCS 5/12.30. The dissolution of a corporation "shall not take away nor impair any civil remedy available to or against such corporation, its directors, or shareholders, for any right or claim . . . [if] commenced within five years after the date of such dissolution." 805 ILCS 5/12.80. Neither Heiman's, nor JTE's, capacity to sue was altered when JTE dissolved in 2014.

Heiman argues, relying on *Jansen v. Ameritel, Inc.*, 266 Ill.App.3d 734 (1st Dist. 1994), that as a majority shareholder of JTE he has standing to bring these claims. In *Jansen*, however, the 50% shareholder and former president of a dissolved corporation had filed the cause of action in the corporation's name. *Id.* at 738. Jansen also could have filed the action in his own name, the court noted, because he was an assignee of the corporation's rights. *Id.* Heiman assigned his rights to JTE, not vice-versa. And at issue here is whether Heiman can bring this

7

action as an individual, not on behalf of JTE. Because Heiman is not the real party in interest, he cannot.[4]

Bimbo Foods also argues that Heiman's status as the assignor of the contract at issue does not confer standing. Bimbo Foods is correct that one who assigns a contract does not have standing to allege breach of that contract. But again, the relevant inquiry is whether Heiman is the real party in interest under Rule 17. That Heiman was previously a party to the contract at issue does not change the fact that he is not the real party in interest now. Heiman's claims are dismissed without prejudice. JTE, however, as the injured party and signatory to the distribution agreement, is the real party of interest and has standing to pursue these claims.

B. **Statutes of limitations**

The first step in resolving whether JTE's claims should be dismissed under Rule 12(b)(6) is determining which state's laws provide the relevant statutes of limitations. In a diversity case, the federal court must apply the choice of law rules of the forum state to determine applicable substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Illinois courts respect a contract's choice-of-law provision as long as the contract is valid and the chosen law is not contrary to the fundamental public policy of Illinois. *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000). Procedural questions, however, are

---

[4] Bimbo Foods also points out that Heiman has failed to provide any evidence that he is, in fact, the majority shareholder of JTE.

8

governed by the law of the forum. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004); *Kalmich v. Bruno*, 553 F.2d 549, 553 (7th Cir. 1977). Illinois considers statutes of limitations to be procedural questions governed by Illinois law. *Thomas*, 381 F.3d at 707 (citing *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill.2d 325, 351 (2002)). This is so even when the parties have included a choice-of-law provision in their contract. *See FDIC v. Petersen*, 770 F.2d 141, 142 (10th Cir. 1985) ("Choice of law provisions in contracts are generally understood to incorporate only substantive law, not procedural law such as statutes of limitations.").

The statute of limitations for breach of written contract[5] in Illinois is ten years, but the Act contains an exception for contracts governed by § 2-725 of the Uniform Commercial Code. 735 ILCS 5/13-206. The UCC applies a four-year statute of limitations from the date of accrual of the claim, which occurs at the breach, regardless of knowledge of the breach. UCC § 2-725, 810 ILCS 5/2-725. Article 2 of the UCC applies only to "transactions in goods." 810 ILCS 5/2-102. Where a contract concerns both goods and services, Illinois courts look to the predominant purpose of the contract. *Belleville Toyota*, 199 Ill.2d at 352. If the services to be provided are incidental to the sale of goods, the UCC applies. *Id.* at 352–53. "[V]irtually every jurisdiction" that has addressed the issue of whether a distributorship agreement is predominantly for the sale of goods has concluded it is. *See Am. Suzuki Motor Corp.*

---

[5] The reference to the covenant of good faith and fair dealing in Count I does not change the analysis because Illinois law does not recognize a breach of the implied duty of good faith and fair dealing as an independent cause of action. *See Zeidler v. A & W Rests., Inc.*, 301 F.3d 572, 575 (7th Cir. 2002).

9

*v. Bill Kummer, Inc.*, 65 F.3d 1381, 1386 (7th Cir. 1995) (applying Wisconsin law). The Illinois Supreme Court has also held that a distributorship agreement, even when it includes provisions for services, is predominantly a contract for the sale of goods governed by the UCC. *Belleville Toyota*, 199 Ill.2d at 353–55.

If the exception for contracts governed by the UCC applies, JTE's contract claim is barred by the four-year statute of limitations. JTE argues that because statutes of limitations are procedural, the Illinois ten-year statute of limitations governs its breach of contract claims.[6] But JTE ignores the exception for claims governed by the UCC. Though the distribution agreement largely concerns the sale of baked goods, its terms also require JTE to assist in marketing Bimbo Foods' products, develop customer relationships, provide customer service, and maintain a record-keeping system. [5-1] at 6. The question is which terms—those for the sale of baked goods or those for services—predominate.

The distribution agreement's provisions are similar to those at issue in *Belleville Toyota*. *See Belleville Toyota*, 199 Ill.2d at 353–55. There, in addition to terms governing the sale of vehicles, the agreement contained provisions on premises maintenance, accounting methods, and display of Toyota marks. *Id*. at 354. The Illinois Supreme Court held that the provisions regarding the sale of goods predominated, reasoning that the accounting provisions were mere housekeeping

---

[6] JTE argues that in New York, distribution contracts are governed by common law, not the UCC. And because New York substantive law applies, JTE reasons, this case must be governed by common law as well, and the general ten-year statute of limitations for written contracts in Illinois must apply. But because statutes of limitations are procedural, Illinois law—not New York law—dictates the analysis. Further, the cases JTE relies on all involve oral contracts and the statute of frauds, and do not support its argument about this written contract for the distribution of goods.

10

matters, the other services provisions were centered around selling goods, and the overarching purpose of the agreement was to secure and maintain the goodwill of potential purchasers. *Id.*

Here, the services provisions in the distribution agreement are similarly incidental and intended to serve the greater purpose of the agreement, which is to sell baked goods.[7] Because the agreement's predominant focus is the sale of goods, the UCC's four-year statute of limitations—and not the general ten-year statute of limitations for written contracts—applies. And under § 2-725 of the UCC the claim accrued at the breach, regardless of JTE's knowledge of the breach.

JTE's tortious interference claims are subject to the Illinois statute of limitations, which is five years. 735 ILCS 5/13-205. The limitations period for a tort claim arising out of a contractual relationship "commences at the time of the breach of duty, not when the damage is sustained." *W. Am. Ins. Co. v. Sal E. Lobianco & Son Co.*, 69 Ill.2d 126, 132 (1977). To prevent the sometimes harsh results of a literal application of the statute of limitations, however, courts created the discovery rule. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill.2d 72, 77 (1995). The discovery rule applies to contractual torts, and so the limitations period for a tortious interference claim begins when the plaintiff knew, or reasonably should have known, that he has been injured and that his injury was wrongfully caused. *See id.* at 78–79.

---

[7] JTE also notes that the breach did not relate to a single transaction, but to defendant's unilateral termination. This is true, but does not alter the fact that the agreement as a whole revolves around the sale of baked goods, and therefore falls within the scope of the UCC.

11

Bimbo Foods terminated its distribution agreement with JTE in January 2011. Pursuant to the UCC, JTE's breach of contract claim accrued on the date of the breach, regardless of JTE's knowledge of the breach. JTE's tortious interference claim accrued whenever a reasonable person should have known that he had been injured and that the injury was wrongfully caused. JTE states that it faithfully performed its duties under the distribution agreement, and yet Bimbo Foods terminated that agreement. A reasonable person would, at that time, realize that he had been injured and that the injury was wrongfully caused. JTE argues, however, that it did not learn about many of the specific acts that constitute tortious interference until 2013 or 2014 and that it was not, at the time of the breach, aware of Bimbo Foods' overarching scheme to force distributors to sell their rights. JTE further argues that this lack of knowledge was reasonable, given Bimbo Foods' assurances that it would stop fabricating breaches once it was caught moving products to photograph an empty shelf. But JTE confuses knowing the extent of its injury, with knowing whether an injury exists at all—and it is the latter that matters for the purposes of the discovery rule. When Bimbo Foods terminated the distribution agreement, despite JTE's full performance, JTE should have realized it had been wrongfully injured in its business relationships, starting the clock on the statute of limitations for its tort claim. JTE filed this suit on May 30, 2017, more than five years after the breach occurred. Because JTE's breach of contract and tortious interference claims both accrued on the date of the breach, its claims are barred by the four- and five-year statutes of limitations respectively. JTE alleges

that it felt consequences of Bimbo Foods's conduct in 2011, and it knew it had done nothing wrong. [5] ¶¶ 14–15, 25–28. It is clear from the face of the complaint that JTE's claims are barred by the statutes of limitations, making dismissal under Rule 12(b)(6) appropriate.

Generally, a plaintiff whose complaint is dismissed under Rule 12(b)(6) should be given at least one opportunity to amend his complaint before the entire action is dismissed. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015). "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). Here, it would be futile to allow JTE to amend its complaint. There are no further facts that JTE could allege that would alter the date of accrual of the statutes of limitations for either of its claims. Dismissal without an opportunity to amend, therefore, is appropriate.

## IV. Conclusion

Heiman has failed to allege any distinct personal injury, and is not the real party in interest under Rule 17. JTE is the real party in interest and has standing to pursue its claims, but those claims are barred by the Illinois statutes of limitations. Bimbo Foods' motion to dismiss [14] is granted. The dismissal is with prejudice. Enter judgment in favor of defendant, and terminate civil case.

ENTER:

                                                  Manish S. Shah
                                                  United States District Judge

Date: October 18, 2017